IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| SOUTHEAST CLINICAL NUTRITION CENTERS, INC., a Georgia corporation,<br><br>    Plaintiff,<br><br>v.<br><br>MAYO FOUNDATION FOR MEDICAL EDUCATION AND RESEARCH, a Minnesota corporation,<br><br>    Defendant. | Case No. 1:13-cv-00626-AT<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED MOTION TO DISMISS** |

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ................................................................1

II.  FACTS .............................................................................2

   A.   Relevant Dates...........................................................1

   B.   The Shortened Phrases "Live IT!" and "Lose IT!" ...............2

   C.   Mayo Clinic's Use of "Live It!" and "Lose It!" ...................3

III. ARGUMENT....................................................................5

   A.   This Court May Consider Certain Documents Referred to and
      Embraced by the Complaint on this Motion to Dismiss .......................6

   B.   Southeast Lacks Priority of Right, a Critical Element for Any
      Trademark Infringement Claim ...........................................7

     1.   Mayo Used "Lose It!" Prior to Any Use by Southeast of
        "Don't Diet. Lose IT!" or "Lose IT", and All Claims Based
        on Alleged Infringement of Those Marks Should Be
        Dismissed ..............................................................8

     2.   Mayo Used "Live It!" Prior to Southeast's Obtaining
        Nationwide Rights in "Don't Diet. Live IT!" ...................10

   C.   Southeast Has No Trademark Rights in "Lose IT!" or "Live
      IT!" Standing Alone ...................................................12

   D.   Southeast's Complaint Does not Plausibly Suggest that  Mayo
      Clinic's Use of "Lose It!" and "Live It!" Is Anything Other
      than Fair Use ..........................................................13

     1.   Use Other Than As A Mark ........................................15

     2.   Use In a Descriptive Sense ........................................17

      **3.**      **Good Faith**........................................................................**19**

      **4.**      **Fair Use Is Commonly Found In Analogous Cases** .......................**20**

   **E.**      **Southeast Does Not State a Claim For Dilution or the Other Claims Merely Mentioned in the Complaint** ........................................**22**

**IV.**   **CONCLUSION** ........................................................................**23**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*,
  2010 U.S. Dist. LEXIS 9366 (N.D. Ga., Feb. 4, 2010), *aff'd*, 2010 U.S.
  App. LEXIS 21027 (11th Cir., Oct. 12, 2010) ....................................................9

*Andy Warhol Enters., Inc. v. Time, Inc.*,
  700 F. Supp. 760, 762 (S.D.N.Y. 1988) ...........................................................21

*Angel Flight of Ga. v. Angel Flight Am.*,
  522 F. 3d 1200 (11th Cir. 2008) ......................................................................10

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009)...........................................................passim

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2006).............................................................................................5

*Car-Freshner Corp. v. SC Johnson & Son, Inc.*,
  70 F. 3d 267 (2d. Cir. 1995) ......................................................................15, 18

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
  125 F.3d 28 (2d Cir. 1997) ................................................................15, 18, 19

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) ........................................................................6

*Eirinberg v. CBS, Inc.*,
  521 F. Supp. 450, 457 (N.D. Ill. 1981)............................................................21

*Eli Lilly & Co. v. Revlon, Inc.*,
  577 F. Supp. 477 (S.D.N.Y. 1983) ..................................................................16

*Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*,
  252 U.S. 538 (1920)..........................................................................................12

*Fawcett Publ'ns, Inc. v. Popular Mech. Co.*,
   80 F.2d 194 (3d Cir. 1935) ..................................................................21

*Fin. Sec. Assurance, Inc. v. Stephens, Inc.*,
   500 F.3d 1276 (11th Cir. 2007) ............................................................6

*Frehling Enters. v. Int'l Select Grp.*,
   192 F. 3d 1330 (11th Cir. 1999) ...........................................................7

*Hoffman Pugh v. Ramsey*,
   193 F. Supp. 2d. 1295 (N.D. Ga. 2002) ................................................6

*Horsley v. Feldt*,
   304 F. 3d 1125 (11th Cir. 2002) ...........................................................6

*In re HSB Solomon Assoc., LLC*,
   102 U.S.P.Q.2d 1269 (TTAB 2012) ...................................................17

*In re Semans*,
   193 U.S.P.Q. 727 (T.T.A.B. 1976) .....................................................13

*Int'l Stamp Art Inc. v. U.S. Postal Serv.*,
   456 F. 3d 1270 (11th Cir. 2006) ...................................................15, 19

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
   543 U.S. 111 (2004)............................................................................14

*Leigh v. Warner Bros., Inc.*,
   212 F. 3d 1210 (11th Cir. 2000) .....................................................7, 15

*Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc.*,
   106 F.3d 355 (11th Cir.1997) *modified on reh'g*, 122 F.3d 1379 (11th Cir.
   1997) ..............................................................................................7, 12

*Maxcess Inc. v. Lucent Techs., Inc.*,
   433 F.3d 1337 (11th Cir. 2005) ............................................................6

*Miller v. King*,
   2007 WL 2164534 (S.D. Ga. July 24, 2007) ........................................7

*Nassau v. Unimotorcyclists Soc'y of Am., Inc.*,
  59 F. Supp. 2d 1233 (M.D. Fla. 1999) ............................................................... 13

*Packman v. Chicago Tribune Co.*,
  267 F.3d 628 (7th Cir. 2001) ............................................................................ 19

*Sam's Riverside, Inc. v. Intercon Solutions, Inc.*,
  790 F. Supp. 2d 965 (S.D. Iowa 2011) ............................................................. 11

*Schmid Labs. v. Youngs Drug Prods.*,
  482 F. Supp. 14 (D.N.J. 1979) .......................................................................... 16

*Sinaltrainal v. Coca-Cola Company*,
  578 F. 3d 1252 (11th Cir. 2009) .......................................................................... 5

*Tally-Ho, Inc. v. Coast Community College Dist.*,
  889 F.2d 1018 (11th Cir. 1989) ........................................................................ 11

*Thoroughbred Legends, LLC v. Walt Disney Co.*,
  2008 U.S. Dist. LEXIS 19960 (N.D. Ga. Feb. 12, 2008) ............................ 17, 20

*Warner Publ'n, Inc. v. Popular Publ'ns, Inc.*,
  87 F.2d 913 (2nd Cir. 1937) ............................................................................. 21

STATUTES

15 U.S.C. § 1051(a)(1) ............................................................................... 8, 10

15 U.S.C. § 1052-53 ......................................................................................... 17

15 U.S.C. § 1057(c) .................................................................................... 8, 10

15 U.S.C. § 1114(1) ........................................................................................... 7

15 U.S.C. § 1115(b)(4) ..................................................................................... 14

15 U.S.C. § 1125 .............................................................................................. 22

15 U.S.C. § 1127 .............................................................................................. 15

**OTHER AUTHORITIES**

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
(4th ed.) ............................................................................ 10-11, 16, 18

Fed. R. Civ. P. 8(a) ...................................................................... 5, 22

Fed. R. Civ. P. 12(b)(6) ................................................................. 2, 23

# I. <u>INTRODUCTION</u>

Plaintiff Southeast Clinical Nutrition Centers, Inc. ("Southeast") alleges that its trademarks "Don't Diet. Lose IT!" and "Don't Diet. Live IT!" are infringed by use of the words "Lose It!" and "Live It!" as section headings within diet books written by Defendant Mayo Foundation for Medical Education and Research ("Mayo Clinic" or "Mayo").   But Southeast has not pleaded an element central to its trademark infringement claim—that it obtained trademark rights prior to Mayo Clinic's allegedly infringing use.  The Complaint also alleges common law trademark rights in the phrases  "Lose IT!" and "Live IT!" alone, based solely on the assertion that these phrases are incorporated in Southeast's federally registered marks "Don't Diet. Lose IT!" and "Don't Diet. Live IT!", respectively. Southeast's claim to such rights is directly contrary to binding precedent in this Circuit.  Finally, Southeast has not pleaded facts that could support its allegations that Mayo Clinic's use of the words "Lose It!" and "Live It!," within dieting books that are clearly labeled with the "Mayo Clinic" trademarks, is anything but a non-trademark fair use of descriptive terms.

In short, Southeast's Complaint fails to state a claim upon which relief may be granted and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).[1]

## II.   <u>FACTS</u>

Southeast alleges in its Complaint that Mayo Clinic's use of the words "Lose It!" and "Live It!" in diet books infringes Southeast's trademarks "Don't Diet. Lose IT!" and "Don't Diet. Live IT!".  (Compl. ¶¶ 43-91).  The diet books at issue are *The Mayo Clinic Diet* and *The Mayo Clinic Diabetes Diet* (the "Mayo Books"), and accompanying journals to each of those titles, namely, *The Mayo Clinic Diet Journal* and *The Mayo Clinic Diabetes Diet Journal* (the "Mayo Journals") (the Mayo Books and the Mayo Journals, collectively, the "Mayo Publications"). Mayo Clinic wrote and published the Mayo Publications because "people [were] hungry for a diet based on Mayo's research and clinical experience."  (Amended Declaration of Kristin K. Zinsmaster ("Am. Zinsmaster Decl.") Ex. 1, at 6; Ex. 3, at 6).

Filed with this motion, and attached as Exhibits to the Amended Zinsmaster

---

[1] Mayo Clinic also wholeheartedly rejects Southeast's claim that there is a likelihood of confusion between Southeast's trademarks and Mayo Clinic's use of "Live It!" and "Lose It!" but addresses itself to issues more readily determined on a motion to dismiss.

Declaration are true and correct copies of the relevant portions of each of the Mayo

Publications.  (Am. Zinsmaster Decl. Exs. 1-4).[2]

## A.   <u>Relevant Dates</u>

The only dates mentioned in the body of the Complaint are July 12, 2011,

the registration date of Southeast's two trademarks, and January 4, 2013, the date

of a letter from Southeast to Mayo Clinic asserting trademark rights.  (Compl.

¶¶ 12, 14).  The relevant dates for Southeast's trademarks must be gleaned from

the exhibits to the Complaint.  The registration certificate for U.S. Trademark

Registration No. 3,993,944 for the "Don't Diet. Live IT!" mark ("'944

Registration") states that the application for registration was filed on December 20,

2010, that the registration issued on July 12, 2011, and that Southeast claimed a

first use in both intrastate and interstate commerce of July 31, 2007.  (Compl. Ex.

4).  The registration certificate for the "Don't Diet. Lose IT!" mark, U.S.

Trademark Registration No. 3,993,945 ("'945 Registration"), lists the same filing

---

[2] Exhibit 1 is comprised of the relevant portions of *The Mayo Clinic Diet*, including the front cover, the spine, the title page, the copyright page, the table of contents, the Introduction and How to Use this Book sections, and the section heading pages from within the book, and the back cover.  Similar pages are included for *The Mayo Clinic Diet Journal* (Ex. 2); *The Mayo Clinic Diabetes Diet* (Ex. 3); and *The Mayo Clinic Diabetes Diet Journal* (Ex. 4).  Specific pages of these Exhibits are referred to herein by their original page designation on the lower, outside corner of each relevant page.  The front cover, back cover, and spine of each Publication are included but not numbered.

and registration dates, but states that Southeast claimed a first use of that mark, in both intrastate and interstate commerce, of August 31, 2010.  (Compl. Ex. 5).

The Complaint makes *no averment* that Mayo Clinic's supposedly infringing use began after Southeast gained any trademark rights.  But *The Mayo Clinic Diet* and *The Mayo Clinic Diet Journal*, the first of the Mayo Publications to make use of the words "Lose It!" and "Live It!" in the manner that Southeast claims to be infringing, were first published at least as early as January 2010.  The public records of the United States Copyright Office state that *The Mayo Clinic Diet* was first published on December 1, 2009.  (*See* Am. Zinsmaster Decl. Ex. 5).  The Amazon.com listings for *The Mayo Clinic Diet* and *The Mayo Clinic Diet Journal* list a publication date of "January 1, 2010" and "January 2010," respectively.  (*See id.* Exs. 6 and 7).  In fact, *The Mayo Clinic Diet* became an immediate success in the marketplace and was number one in its category on the *New York Times* bestseller list as early as January 24, 2010.  (*See id.* Ex. 8).

## B.   The Shortened Phrases "Live IT!" and "Lose IT!"

Southeast also alleges common law rights in parts of its "Don't Diet. Lose IT!" and "Don't Diet. Live IT!" trademarks —namely, the shortened phrases "Lose IT!" and "Live IT!".  However, Southeast makes no allegation that it has ever used the phrases "Live IT!" and "Lose IT!" separate and apart from the longer marks.

-2-

With regard to alleged rights in "Live IT!," the Complaint states only "[a]s set forth in [the registration], the portion of [Southeast's] registered mark including the words "lose it" is set out with capital letters and an exclamation mark, whereby Southeast also has common law rights to the mark 'Lose IT!' as used in connection with" all of the services identified in the registration. (Compl. ¶13) (emphasis added). The equivalent allegation is made with regard to "Live IT!". (Compl. ¶ 15).[3] On the basis of these alleged facts alone, Southeast claims to be "the owner of the 'Lose IT!' mark" and "the owner of the 'Live IT!' mark." (Compl. ¶¶ 69, 78).

### C.    Mayo Clinic's Use of "Live It!" and "Lose It!"

The phrases "Live It!" and "Lose It!" appear nowhere on the front or back covers or the spines of any of the Mayo Publications. (*See* Am. Zinsmaster Decl. Exs. 1-4). Each book contains the name "Mayo Clinic" in no fewer than two places on the front cover, two places on the spine, and eight places on the back cover. (*Id.*) The phrases "Lose It!" and "Live It!" are two of three subparts within the Mayo Books and two of five subparts of the Mayo Journals. (*Id*. Ex. 1, at iii-v;

---

[3] Throughout the Complaint, Southeast identifies U.S. Registration No. 3,993,944 as being a registration of the "Don't Diet. Lose IT!" mark, and U.S. Registration No. 3,993,945 as being a registration of the "Don't Diet. Live IT!" mark. (Compl. *passim*). This is wrong. The '944 Registration is of the "Don't Diet. Live IT!" mark. (Compl. Ex. 4). The '945 Registration is of the "Don't Diet. Lose IT!" mark. (Compl. Ex. 5).

Ex. 2, at 3; Ex. 3, at iii-v; Ex. 4, at 3).  Throughout the Mayo Publications, the phrases refer to and describe processes for weight loss and maintenance.  As explained in "How to use this book" sections of the *The Mayo Clinic Diet* and *The Mayo Clinic Diabetes Diet*, "Part 1, *Lose It!* [is] a two-week quick start designed to help you lose 6 to 10 pounds in a safe and healthy way."  (*Id.* Ex. 1, at 7; Ex. 3, at 7)*.*  "Part 2, *Live It!* . . . is designed to help you continue to lose 1 to 2 pounds a week until you reach your goal weight – and then maintain that weight as you *Live It!* for the rest of your life."  (*Id.* Ex. 1, at 7; Ex. 3, at 7).  "Mayo Clinic" appears repeatedly and prominently on each of the online marketing pieces attached to the Complaint, while the accused phrases appear not at all or with much less prominence.  (Compl. Ex. 9-10).

The Complaint alleges that the Mayo Publications "repeatedly use[] both '*Lose It!*' and '*Live It!*' to refer to portions of the Mayo Program" (Compl. ¶ 25), and that "Mayo uses the infringing mark 'Lose It!' to identify a portion of the Mayo Program" and "'Live It!' to identify" a different "portion of the Mayo Program."  (Compl. ¶¶ 44, 55).  What the well-pleaded facts in the Complaint and a review of the Mayo Publications establish is that "Lose It!" and "Live It!" are only used as the names of sections in the Mayo Publications and describe, in general terms, processes for weight loss and maintenance.

### III.   **ARGUMENT**

"A pleading that states a claim for relief must contain… a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (emphasis added).  "[T]the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.  A pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (internal citations omitted) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2006)).  "A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." *Sinaltrainal v. Coca-Cola Company*, 578 F. 3d 1252, 1260 (11th Cir. 2009).

Southeast's Complaint does not even offer formulaic recitation for some of the elements necessary to its claims.  As to other elements, it offers no more than that.  Southeast has not "nudged [its] claims across the line from conceivable to plausible and [the Complaint] must be dismissed." *Twombly*, 550 U.S., at 570.

**A.**    <u>**This Court May Consider Certain Documents Referred to and Embraced by the Complaint on this Motion to Dismiss**</u>

As an initial matter, Eleventh Circuit law provides that this Court may consider documents attached to a motion to dismiss, without converting the motion to one for summary judgment, where they are central to the plaintiff's claim, attached to defendant's motion, and when their contents are undisputed. *See Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007); *Maxcess Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1340 n.3 (11th Cir. 2005); *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005); *Horsley v. Feldt*, 304 F. 3d 1125, 1134 (11th Cir. 2002).

The *Mayo Clinic Diet* and the other Mayo Publications clearly are central to Southeast's claims, and their printed content cannot be disputed. *See, e.g.*, *Hoffman Pugh v. Ramsey*, 193 F. Supp. 2d. 1295, 1297 n.1 (N.D. Ga. 2002). Likewise, the publication dates of these books and *The Mayo Clinic Diet*'s appearance on the *New York Times* best-seller list (which establishes that book's presence in the marketplace at least as early as January 24, 2010) are as central to Southeast's claim as they are indisputable.

Even if Southeast should argue that these documents are not central to its claims—or that their content is disputed—and if the entire Complaint is not dismissed on other grounds, the court may convert the motion to summary

judgment on this single issue.  *See, e.g., Miller v. King*, 2007 WL 2164534, at *2 (S.D. Ga. July 24, 2007) (motion to dismiss converted to motion for summary judgment as to only three issues).

### B.   Southeast Lacks Priority of Right, a Critical Element for Any Trademark Infringement Claim

To prevail on a claim of infringement of a registered trademark under 15 U.S.C. § 1114(1), "a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion."  *Frehling Enters. v. Int'l Select Grp*., 192 F. 3d 1330, 1335 (11th Cir. 1999).  Priority is also a critical element of any claim for infringement of a common law mark.  *See Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc*., 106 F.3d 355, 360 (11th Cir.1997) *modified on reh'g*, 122 F.3d 1379 (11th Cir. 1997).  "[T]he plaintiff'*s* use of the mark must predate the defendant's potentially confusing mark."  *Leigh v. Warner Bros., Inc*., 212 F. 3d 1210, 1217 (11th Cir. 2000).

Southeast's Complaint includes no allegation of priority whatsoever, as to any of its allegedly infringed marks.  The facts that are pleaded coupled with the easily verifiable publication date of *The Mayo Clinic Diet* and *The Mayo Clinic Diet Journal*, establish 1) that Mayo Clinic used "Lose It!" prior to any use by Southeast of "Don't Diet. Lose IT!" or "Lose IT!" and 2) that Mayo Clinic used

"Live It!" well prior to Southeast's December 20, 2010 priority date of its federal

registration of "Don't diet. Live IT!"  (Am. Zinsmaster Decl. Exs. 5-8).

> **1.    Mayo Used "Lose It!" Prior to Any Use by Southeast of "Don't Diet. Lose IT!" or "Lose IT", and All Claims Based on Alleged Infringement of Those Marks Should Be Dismissed**

A trademark registration confers nationwide priority based on "constructive

use of the mark" as of the filing date of the application for registration "against any

other person except for a person whose mark has not been abandoned and who,

prior to such filing . . . has used the mark."  15 U.S.C. § 1057(c).  In this case, the

filing date for the application that became the '945 Registration was December 20,

2010—almost one year *after* Mayo Clinic first started using "Lose It!" in *The*

*Mayo Clinic Diet* and *The Mayo Clinic Diet Journal*.  *See infra* Part I(A).  And the

'945 Registration makes clear that Southeast does not have priority based on

actual, prior use of the "Don't Diet. Lose IT!" mark.  In the application for the '945

Registration, Southeast was required to "include . . . the date of [its] first use of the

mark [and] the date of [its] first use of the mark in commerce."  15 U.S.C. §

1051(a)(1).  For both dates, Southeast listed August 31, 2010.  *See infra* Part II(A).

That date is *at least eight months after* Mayo Clinic first started using "Lose It!" in

the first of the Mayo Publications.  *See infra* Part II(A).

Because Southeast has not pleaded priority regarding "Don't Diet. Lose IT!", and indeed it cannot do so, the court should dismiss Southeast's First Cause of Action.

The Court should likewise dismiss Southeast's Third Cause of Action, because that claim alleges trademark infringement of common law rights in "Lose IT!", and because Southeast's sole claim to such rights is that it has used that shortened phrase as part of the "Don't Diet. Lose IT!" mark. *See infra* Part II(B). Because Southeast does not and cannot plausibly allege priority for the longer mark, it similarly cannot allege priority as to "Lose IT!" by itself. The Third Cause of Action must also be dismissed.

Finally, the Court should also dismiss the portion of the Fifth Cause of Action alleging that Mayo Clinic's use of "Lose It!" infringes Southeast's rights. The Fifth Cause of Action claims "common law trademark infringement and unfair competition", while giving no indication of which jurisdiction's common law it is invoking. Presumably, Southeast means to allege violation of Georgia common law. "[C]laims for trademark infringement under Georgia common law and unfair competition under Georgia common law . . . are governed by the same standard" as trademark infringement claims under the federal trademark statute. *Alaven Consumer Healthcare, Inc. v. DrFloras, LLC*, 2010 U.S. Dist. LEXIS 9366, at *13

(N.D. Ga., Feb. 4, 2010), *aff'd*, 2010 U.S. App. LEXIS 21027 (11th Cir., Oct. 12, 2010) [*see also Angel Flight of Ga. v. Angel Flight Am.*, 522 F. 3d 1200, 1205 n.1 (11th Cir. 2008) (for "common law trademark infringement, we look to federal law as persuasive authority") (citing *Ackerman Sec. Sys., Inc. v. Design Sec. Sys., Inc.*, 412 S.E.2d 588, 590 (Ga. Ct. App. 1991))].  Therefore, for the reasons stated above, the claims in the Fifth Cause of Action relating to "Lose It!" must be dismissed.

### 2. Mayo Used "Live It!" Prior to Southeast's Obtaining Nationwide Rights in "Don't Diet. Live IT!"

Southeast filed the application that became the '944 Registration on December 20, 2010.  This date is at least twelve months after Mayo Clinic first started using "Live It!" in the first of the Mayo Publications.  See *infra* Part I(A). Southeast cannot claim nationwide constructive use rights to the "Don't Diet. Live IT!" mark any earlier than this filing date.  15 U.S.C. § 1057(c).  The dates of "first use of the mark [and] first use of the mark in commerce," 15 USC § 1051(a)(1), are both listed in the '944 Registration as July 31, 2007.  *See infra* Part II(A). Southeast's claimed 2007 first use date is, of course, earlier than Mayo's first use of the phrase "Live It! in the Mayo Publications, but a registration "is proof of use only as of its filing date, not the date of first use claimed" in the application.  2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 16:19 (4th

ed.) (citing *Harvey Aluminum (Inc.) v. Am. Screen Prods. Co.*, 305 F.2d 479, 481 (CCPA 1962)); *see also*, *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 978 n.17 (S.D. Iowa 2011) (a 1969 date of first use claimed in a federal trademark registration is no evidence of use prior to the 2009 filing date of the application for registration).

The Second and Fourth Causes of Action, both based on the "Don't Diet. Live IT!" mark should be dismissed in their entirety, and the portion of the Fifth Cause of Action based on that mark should be dismissed as well.  If any of these claims should survive the independent grounds for dismissal, described below, Southeast should be required to plead the geographic extent of its pre-registration use in order to give Mayo Clinic "fair notice of what the . . . claim is and the grounds upon which it rests."  *Iqbal*, 556 U.S., at 698-99 (2009) (quotations omitted) (omission in original).  Such re-pleading would be necessary because common law trademark rights, such as those that Southeast would have had prior to registration, would be limited to the geographic areas where Southeast has actually used the mark.  *See*, *e.g.*, *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1027-28 (11th Cir. 1989) ("A senior user's rights…are geographically limited to only those territories in which it actually uses its mark or into which it might naturally expand.").

C.   **Southeast Has No Trademark Rights in "Lose IT!" or "Live IT!" Standing Alone**

The Third and Fourth Causes of Action must also be dismissed on grounds independent from priority.  These claims depend, respectively, on common law rights in the phrases "Lose IT!" and "Live IT!", standing alone.  Southeast's claims to rights in these phrases stem solely from the fact they are incorporated as parts of Southeast's federally registered marks "Don't Diet. Lose IT!" and "Don't Diet. Live IT!"  *See infra* Part II(B).  These assertions are directly contrary to controlling precedent in this Circuit and basic principles of trademark law.

The law of this Circuit is that the inclusion of component words and phrases within a longer phrase claimed as a trademark does not establish trademark rights in the component words or phrases alone. For example, in *Lone Star Steakhouse & Saloon,* the Eleventh Circuit Court of Appeals carefully considered and rejected an argument that a plaintiff had "prior rights in the words 'Lone Star' through its acquisition of the LONE STAR CAFE mark."  *Lone Star Steakhouse & Saloon*, 106 F. 3d at 361.  In so doing, the court cited *Estate of P.D. Beckwith, Inc. v. Comm'r of Patents*, 252 U.S. 538, 545-46 (1920), for the proposition that "[t]he commercial impression of a trade-mark is derived from it as a whole, not from its elements separated and considered in detail."  The appearance of two words within a longer phrase that is the actual trademark simply does not establish trademark

rights in those words separate and apart from the longer phrase. *See, e.g.*, *Nassau v. Unimotorcyclists Soc'y of Am., Inc.*, 59 F. Supp. 2d 1233, 1239 (M.D. Fla. 1999) (no rights in alleged mark "Unimotorcyclists Society" where plaintiff showed only use of those words within the longer term "American National Unimotorcyclists Society," an acronym of the longer term, and a logo containing the longer term); *cf. In re Semans*, 193 U.S.P.Q. 727 (T.T.A.B. 1976) (the term "KRAZY," on the same line and in the same script as the expression "MIXED-UP," does not in itself function as a trademark apart from the unitary phrase "KRAZY MIXED-UP," notwithstanding that "MIXED UP" may be merely descriptive of the goods).

The Third and Fourth Causes of Action do not state a claim on which relief may be granted and must be dismissed, regardless of priority of right.

### D.    Southeast's Complaint Does not Plausibly Suggest that  Mayo Clinic's Use of "Lose It!" and "Live It!" Is Anything Other than Fair Use

Even assuming for the sake of argument that Southeast had prior rights in any of the marks on which it relies, *and* protectable common-law rights to the shortened versions "Lose IT!" and "Live IT!" alone, this Court should dismiss the entire Complaint, because Southeast has failed to plead, and cannot plead, that Mayo Clinic's use of "Lose It!" and "Live It!", as shown in the Exhibits to the

-13-

Complaint and the Mayo Publications, amounts to anything but non-trademark fair use of descriptive terms.

Registered trademarks can only be enforced "subject to proof of infringement . . . and subject to defenses or defects" including that the alleged infringement is use "otherwise than as a mark . . . of a term . . . which is descriptive of and used fairly and in good faith only to describe the goods or services." 15 U.S.C. § 1115(b)(4). A fair use is a descriptive use of a name to indicate the nature, quality, and purpose of the goods and not as a mark. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc*., 543 U.S. 111, 115 (2004). The fair use doctrine is grounded in sound public policy and the statutory scheme of the federal trademark law. The common law fair use doctrine reflected the "undesirability of allowing anyone to obtain a complete monopoly on use of a descriptive term simply by grabbing it first," and "[t]he Lanham Act adopts a similar leniency, there being no indication that the statute was meant to deprive commercial speakers of the ordinary utility of descriptive words." *KP Permanent Make*-Up, 543 U.S. at 122 (quotation and citation omitted). "It is a fundamental principle marking an outer boundary of the trademark monopoly that, although trademark rights may be acquired in a word or image with descriptive qualities, the acquisition of such rights will not prevent others from using the word or image in

good faith in its descriptive sense, and not as a trademark." *Car-Freshner Corp. v. SC Johnson & Son, Inc*., 70 F. 3d 267, 269 (2d. Cir. 1995)

Fair use is established when the "use is (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Int'l Stamp Art Inc. v. U.S. Postal Serv.*, 456 F. 3d 1270, 1274 (11th Cir. 2006). The facts alleged in Southeast's Complaint, combined with consideration of the Exhibits to the Complaint and the Mayo Publications themselves, establish each of these elements.

### 1.    Use Other Than As A Mark

A trademark is a "word, name, symbol, or device, or any combination thereof [used] to identify and distinguish [one's] goods . . . from those manufactured or sold by others *and to indicate the source of the goods*." 15 U.S.C. § 1127 (emphasis added). Trademarks "answer the question 'Who made it?' rather than 'What is it?'" *Leigh*, 212 F.3d at 1217. Mayo Clinic uses "Lose It!" and "Live It!" solely in the second sense.

Mayo Clinic's non-trademark use is "evidenced by the fact that the source of [its] product is clearly identified by the prominent display of [its] own trademarks." *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co*., 125 F.3d 28, 30-31 (2d Cir. 1997). "When use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not

constitute trademark use." 2 McCarthy 11:46. The words "Mayo Clinic" appear at least twelve times on the front and back covers and spines of the accused books. (*See* Am. Zinsmaster Decl. Exs. 1-4). They appear again on the title pages. (*Id.*) The words "Lose It!" and "Live It!" do not appear in any of those places. (*Id.*) "Mayo Clinic" appears repeatedly and prominently on each of the online marketing pieces attached to the Complaint, while the accused phrases appear not at all or with much less prominence. (Compl. Ex. 9-10).

Southeast emphasizes that the phrases "Lose It!" and "Live It!" are used in Mayo Clinic's books and marketing, with first-letter capitalization and italics, to "refer to a part" of a diet program . (*E.g.*, Compl. ¶¶ 25-31, 37-42). But even if the characterization is accurate, such use is not trademark use. Setting a word in all capital letters and emphasizing it "as a symbol to attract public attention" (which is far more than is the case here) "does not mean it is being used as a trademark. Virtually every aspect of a product's trade dress is intended to catch the eye of the purchaser. Unless attention is drawn to the particular word or term *as being indicative of source of origin* of that product, the term is not being used as a trademark." *Schmid Labs. v. Youngs Drug Prods.*, 482 F. Supp. 14, 20-21 (D.N.J. 1979) (emphasis in original); *accord Eli Lilly & Co. v. Revlon, Inc.*, 577 F. Supp. 477, 486 (S.D.N.Y. 1983).

More fundamentally, using a phrase as the name of a process, or a part of a "program" as the Complaint puts it, is at odds with that phrase serving to identify source. In interpreting the statutory requirement that a mark, to be registered, must be one "by which the goods [or services] of the applicant may be distinguished from the goods [or services] of others," 15 U.S.C. § 1052-53, the Trademark Trial and Appeal Board and its reviewing courts have repeatedly held that a "term that identifies only a process, style, method or system is not registrable." *In re HSB Solomon Assoc., LLC*, 102 U.S.P.Q.2d 1269, 1270 (TTAB 2012) (collecting cases). Even where a word or phrase appears with the ™ symbol, the fact that it is used as the name of a process or system precludes its being a source identifier, absent a "direct association" making it clear that the name of the process is also the name of the person or entity that is providing the process. *Id.* at 1270, 1274. *Cf. Thoroughbred Legends, LLC v. Walt Disney Co.*, 2008 U.S. Dist. LEXIS 19960, at *14 (N.D. Ga. Feb. 12, 2008) (no trademark use because plaintiff failed to show that its mark was "in fact ever *used to signify origin to customers and competitors*" (emphasis in original)).

### 2.    Use In a Descriptive Sense

In the fair use analysis, a mark or portion of a mark is used descriptively where a defendant uses it to "describe aspects of [its] own goods," regardless of

whether it is a descriptive or strong mark as applied to the plaintiff's goods. *Car-Freshner Corp.,* 70 F.3d, at 270. A "descriptive use" is not only use in a sentence to discuss a defendant's product, but also a use which suggests or merely makes reference to aspects of the product. "Defendant's fair use need not literally describe a characteristic of the goods, but can fit within the statutory defense if its use is descriptive in a broader sense." 2 McCarthy § 11:49. It was fair use for lipstick vendors to use the phrase "Seal it with a kiss!" on countertop displays inviting shoppers to send a postcard with a lipstick imprint on it, and so not an infringement of plaintiff's mark "Sealed With A Kiss," for lip gloss. *Cosmetically Sealed Indus., Inc.*, 125 F.3d at 31. A defendant's sale of pine tree-shaped air-fresheners, regardless of plaintiff's established trademark rights in the same shape, was fair use because the shape "refers to the pine scent" of the product and to the Christmas season when the product was sold. *Car-Freshner Corp.*, 70 F.3d, at 270.

Here, Mayo Clinic's use of the commonplace diet phrases "Lose It!" and "Live It!" is clearly descriptive. "Lose It!" is used to refer to and describe the initial stages of a diet program in which the dieter is to lose weight quickly. (*See generally* Am. Zinsmaster Decl. Exs. 1-4). "Live It!" is used to refer to and describe the part of the program where the dieter "lives" his or her weight loss and

strives to maintain a healthy weight going forward. (*Id.*).  The phrases are used "to describe an action that [Mayo Clinic] hope[s] consumers will take, using [its] product."  *Cosmetically Sealed Indus., Inc.*, 125 F.3d at 30

### 3.   Good Faith

"[T]he standard for good faith for fair use is. . .whether the alleged infringer intended to trade on the good will of the trademark owner by creating confusion as to the source of the goods or services."  *Int'l Stamp Art, Inc*., 456 F.3d at 1274. "Mere knowledge of [plaintiff's] trademark" is insufficient to establish bad faith. *Packman v. Chicago Tribune Co*., 267 F.3d 628, 642 (7th Cir. 2001) (citation omitted) (quoted in *Int'l Stamp Art, Inc*., 456 F.3d at 1275).

Southeast makes no allegation that could support a finding that Mayo Clinic's use of these phrases has not been in good faith.  The allegation that Mayo Clinic has had constructive or "formal notice of [Southeast's] ownership" of the allegedly infringed trademarks (Compl. ¶¶ 51-53, 62-64), taken as true, does not meet the requisite pleading standard.  Southeast has not alleged that Mayo Clinic "intended to trade on" Southeast's good will.  Even if there were such an allegation, it would be implausible because Mayo Clinic began using "Lose It!" well *before* Southeast began using "Don't Diet. Lose IT!" and because Mayo Clinic's use of both phrases does not act as a source identifier.

*Iqbal* is analogous.  The plaintiff in that case was required by the Federal Rules and the relevant cause of action to plead facts showing that defendants intentionally "acted with discriminatory purpose." *Iqbal*, 556 U.S. at 677, 682-84. The Court held that even "well-pleaded facts giv[ing] rise to a plausible inference" of such intent was not enough to survive the motion to dismiss.  *Id.* at 682.  In this case, there is not even a "threadbare recital[]," *id.* at 683., of the necessary element, much less well-pleaded facts showing bad faith.

### 4.    Fair Use Is Commonly Found In Analogous Cases

That Mayo Clinic's use of "Live It!" and "Lose It!" as headings in the Mayo Publications is a non-trademark fair use is supported by numerous analogous cases. For example, in a recent case in this district, the court found that plaintiff's use of "Ruffian," as the title of a movie about a racehorse of that name, was a fair use and did not infringe plaintiff's registered "Ruffian" trademark for "[e]ntertainment services, namely. . . motion picture films." *Thoroughbred Legends, LLC*, 2008 U.S. Dist. LEXIS 19960, at *4, *28-29:

> Defendants' use of "Ruffian" as a title to a film about Ruffian conveys no information about the origin of the film.  Indeed, the film's origin is apparent from the conspicuous logo "ESPN Home Entertainment" above the film's title on the DVD cover, and a smaller logo that reads "espnoriginalentertainment," in the bottom right hand corner of the DVD cover.  No reasonable juror would confuse the title of the film "Ruffian" with the source of the film.  There is therefore no serious question that Defendants' use was descriptive, a non-trademark use, and in good faith.  *Because this is apparent from the face of the DVD cover, discovery would be of no assistance.*

*Id.* at *28-29 (emphasis added).

In *Andy Warhol Enters., Inc. v. Time, Inc*., use of "Interview" as a section heading within *Time* magazine was a fair use and did not infringe plaintiff's federal registration of the same word for a magazine title.  700 F. Supp. 760, 762 (S.D.N.Y. 1988).  *Eirinberg v. CBS, Inc.* held that use of "Your Dollars" for the title of a radio program on personal finance was a fair use and so did not infringe the mark "Your Dollar's Worth" for tape recorded programs on similar topics.  521 F. Supp. 450, 457 (N.D. Ill. 1981).  *See also Fawcett Publ'ns, Inc. v. Popular Mech. Co*., 80 F.2d 194, 198-99 (3d Cir. 1935) (finding that the use of "Mechanics" within "Modern Mechanics," for the title of a magazine, was a fair use; no infringement of the magazine title "Popular Mechanics"); *Warner Publ'n, Inc. v. Popular Publ'ns, Inc.*, 87 F.2d 913, 915 (2nd Cir. 1937) (Defendant's descriptive use of "Rangeland Romances" as title for magazine could not be enjoined on ground that title was confusingly similar to title "Ranch Romances" used for plaintiff's magazine.  "The defendant has as good a right to a descriptive title as has the plaintiff.").

The entire Complaint should be dismissed because Mayo Clinic's use of the phrases "Lose It!" and "Live It!" is a fair use.

**E.** **Southeast Does Not State a Claim For Dilution or the Other Claims Merely Mentioned in the Complaint**

The Complaint also mentions other claims, including trademark dilution in violation of 15 U.S.C. § 1125, (Compl. ¶ 1 and headings to Third and Fourth Causes of Action), and claims such as false advertising and misappropriation. (Compl. ¶ 1).  But beyond merely stating that the Complaint includes such claims, there are not even "threadbare recitals" of the elements that would support them. *Iqbal*, 556 U.S. at 683.

Dilution is actionable under federal law only by the owner of a "*famous* mark that is distinctive, inherently or through acquired distinctiveness."  15 U.S.C. 1125(c) (emphasis added).  "A mark is famous if it is *widely recognized* by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."  *Id*. (emphasis added).  Southeast does not even allege that its mark is famous, and the well-pleaded facts certainly would not support such an allegation.

Other claims mentioned in the Complaint do not appear outside of a long list under the heading "Nature of Action" (Compl. ¶ 1).  Southeast has clearly not met the requirements of Fed. R. Civ. P. 8(a) as to any of these claims.  The mere mention of them in one paragraph of the Complaint should not prevent the Court from dismissing the Complaint.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Southeast's Complaint fails to state claims against Mayo Clinic.  Mayo Clinic respectfully requests that the Court dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Because Southeast's claims contain flaws that could not be remedied through re-pleading, Mayo Clinic asks that the claims be dismissed with prejudice.

Dated: May 24, 2013                        KILPATRICK TOWNSEND &
                                           STOCKTON LLP

                                           By /s/ James W. Faris
                                               Christopher P. Bussert
                                               Georgia Bar No. 099085
                                               James W. Faris
                                               Georgia Bar No.452293
                                           1100 Peachtree Street, Suite 2800
                                           Atlanta, Georgia 30309-4528
                                           Telephone: (404) 815-6500
                                           Facsimile: (404) 815-6555
                                           cbussert@kilpatricktownsend.com
                                           jfaris@kilpatricktownsend.com

                                           DORSEY & WHITNEY LLP
                                               J. Thomas Vitt, *pro hac vice*
                                               Kristin K. Zinsmaster, *pro hac vice*
                                               Mark D. Wagner, *pro hac vice*
                                           50 South Sixth Street, Suite 1500
                                           Minneapolis, MN 55402-1498
                                           Telephone:  (612) 340-2600
                                           Facsimile:  (612) 340-2868

                                           *Attorneys for Defendant  Mayo
                                           Foundation for Education and Research*

<u>LOCAL RULE 7.1(D) CERTIFICATION</u>

Counsel for the Defendant hereby certifies that this document has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(B).

/s/ Mark D. Wagner
Mark D. Wagner

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2013, I electronically filed the foregoing

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF AMENDED

MOTION TO DISMISS with the Clerk of Court using the CM/ECF system, which

will automatically send email documentation of such filing to the following

attorney of record:

Sanford Jay Asman            Sandy@Asman.com

/s/ James W. Faris
James W. Faris